## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JUAN IVAN COLÓN-GONZÁLEZ;**

*Plaintiff*,

v.

**COMMONWEALTH OF PUERTO RICO, et al.;**

*Defendants*.

**CIVIL NO.** 17-1162 (DRD)

### OPINION AND ORDER

On February 3, 2017, Plaintiff Juan Ivan Colón-González (hereinafter, "Plaintiff" or "Colón") filed a Complaint, under various federal and local laws, against various Defendants (hereinafter, "Defendants"), including the Commonwealth of Puerto Rico, the Comisión Estatal de Elecciones, in English, "Puerto Rico State Commission on Elections" (hereinafter, "CEE" for its Spanish acronym), and Liza M. Garcia-Velez (hereinafter, "García"), both in her personal capacity and in her official capacity. *See* Docket No. 1. Plaintiff claims that he was discriminated against based on sex and age, and that for this reason he was unjustly terminated from his position on June 30, 2015. *See Id*. He further claims the reason provided for his termination was fabricated and illegal because he worked as a career employee, not as an employee in a position of trust. *See Id*. at 2.

On August 2, 2017, the Court stayed the instant case under Title III of the Puerto Rico Oversight Management, and Economic Stability Act (hereinafter, "PROMESA"), 48 U.S.C. §§ 2101-2241. *See* Docket Nos. 19-20. The case was reopened on July 19, 2019,

. . . solely to the limited extent necessary (i) to allow the Prepetition Action to proceed to final judgment, and (ii) for the enforcement of any judgment ordering reinstatement of the plaintiff to his former position; provided, however, that the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment for money damages, backpay and provisional remedies against the Commonwealth or any other Title III debtor *See* Docket No. 25-1; 28.

On August 8, 2019, Defendants filed a *Motion to Dismiss*, arguing, *inter alia*, that Defendant Garcia is not individually liable and that the Defendants, in general, are not liable. *See* Docket No. 32. For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** Defendants' *Motion to Dismiss* at Docket No. 32.

## I.    FACTUAL AND PROCEDURAL HISTORY

Taking the allegations set forth in the *Complaint* as true, the facts are as follows:

On July 2, 2003, Plaintiff was hired as Administrator for the Comisión Estatal de Elecciones Child Care Center [hereinafter, "CEE Child Care Center"], a career position[1] that had educational and experiential requirements. *See* Docket No. 1 at ¶¶ 17, 20 & 24. During his twelve (12) years of service, Plaintiff never received warnings or was admonished by the other Presidents of the CEE Child Care Center. *See Id*. at ¶¶ 34-37. To the contrary, "all prior presidents were extremely satisfied by [his] work as Administrator [of the CEE Child Care Center]." *See Id*. at ¶ 37. According to Plaintiff, in January of 2015, Defendant García was designated to "bec[ome] Acting President

---

[1] "Under Puerto Rico law, career employees have a property interest in their continued employment. *See Figueroa–Serrano*, 221 F.3d at 6; Kauffman, 841 F.2d at 1173. However, 'public employees hired for career positions in violation of the Puerto Rico Personnel Act, or agency regulations promulgated thereunder, may not claim property rights to continued expectations of employment because their career appointments are null and void *ab initio*.'" *Gonzalez-De-Blasini v. Family Dep't*, 377 F.3d 81, 86 (1st Cir. 2004) (citing *Kauffman v. P.R. Tel. Co.*, 841 F.2d 1169, 1173 (1st Cir. 1988); *see also De Feliciano v. De Jesús*, 873 F.2d 447, 452–55 (1st Cir.1989).

of the CEE" and shortly thereafter began exhibiting a "pattern of negative behavior towards the Plaintiff." *See Id*. at ¶¶ 38-39.

Plaintiff alleges that Defendant García "began to cut communications with Plaintiff", "never addressed the Plaintiff directly", isolated Plaintiff from administrative decisions", and disrespected Colón on various occasions. *See Id*. at ¶¶ 40-44. Plaintiff further claims that Defendant García stripped him of some of his functions as Administrator and intentionally sabotaged Plaintiff so that he would come across as a deficient employee and be negatively affected in his job. *See Id*. at ¶¶ 45-46. Pursuant to the allegations, Plaintiff was ultimately terminated from his position on June 30, 2015, for lack of trust even though he was occupying a career position. *See Id*. at ¶ 47. Shortly thereafter, Defendant García appointed a younger, female employee to substitute Plaintiff without holding a job announcement or interviewing any candidates, as was done when Plaintiff was first appointed in 2003. *See Id*. at ¶ 48.

On February 3, 2017, Plaintiff filed a *Complaint*, claiming that Defendants were liable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) [hereinafter, "Title VII"] and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 [hereinafter, "ADEA"], as well as various state laws for the reasons stated above. *See* Docket No. 1. On August 2, 2017, due to the claims for monetary relief, the Court issued an order staying the instant case under Title III of PROMESA, 48 U.S.C. §§ 2101-2241. *See* Docket Nos. 19 & 20. Later, on July 19, 2019, the Court reopened the case solely to determine whether Plaintiff has the right to be reinstated to his position as Administrator of the CEE Child Care Center. *See* Docket No. 28.

On August 8, 2019, Defendants filed a *Motion to Dismiss*. *See* Docket No. 32. Defendants did not challenge the facts set forth in the *Complaint*, but rather, limited themselves to

challenging their liability under the federal and state law statutes invoked by Plaintiff and claiming that the state law claims are time-barred. *See Id*. Among other claims, Defendants aver that Defendant Garcia is not individually liable under Title VII or the ADEA because the general rule of the First Circuit prohibiting individual liability of employees applies. *See Id*. at 6-7. Defendants also claim that the state-law claims are time-barred. *See Id.* at 7-10. Defendants further contend that sovereign immunity under the Eleventh Amendment of the United States Constitution applies warranting a dismissal as to the CEE. *See Id*. at 11-15.

On September 27, 2019, Plaintiff filed his *Opposition* to Defendants' *Motion to Dismiss*, arguing that Defendant Garcia is indeed liable under Title VII and the ADEA. He supports this argument by citing caselaw precedent from sister Circuits. *See* Docket No. 44 at 7-10. Plaintiff also avers that Defendants are all liable under state law claims. *See* Docket no. 44.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).') (quoting *Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is currently required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id*. at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See *Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id*.

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore,

such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly* 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. at 679); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 45 (1st Cir. 2009).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken a true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be

enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596; *see Iqbal*, 556 U.S. at 681 ("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. V. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010)(holding that *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id*. at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (Internal citations and quotations omitted).

### III.    ANALYSIS

#### A.  *Defendant Garcia's Individual Liability under Title VII and the ADEA*

Title VII of the Civil Rights Act provides in its pertinent part that "[i]t shall be unlawful employment practice for an employer – . . . to discharge any individual, or otherwise to discriminate any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To that effect, the First Circuit has determined that "there is no individual

employee liability under Title VII." *Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009); *see Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 (1st Cir. 2010)(holding that because plaintiffs may not bring Title VII suits against individual employees, a dismissal against all individual defendants is proper.) Further, "[a]s held by [] sister circuits [the First Circuit] find[s] that '[t]he statutory scheme [of Title VII] itself indicates that Congress did not intend to impose individual liability on employees.'" *Id.* (quoting *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993)).

As discussed by the Seventh Circuit and validated by the First Circuit, "[u]ntil 1991, a successful plaintiff could recover only back pay and equitable relief such as reinstatement. Those types of remedies typically are only obtainable from an employing entity, not from a mere individual. That arrangement suggests that Congress did not contemplate individual liability when it originally passed the relevant statutes." *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995); *see Fantini*, 557 F.3d at 31.

As mentioned above, Defendants claim that Codefendant Garcia is not individually liable under Title VII or the ADEA, as interpreted by First Circuit precedent. Plaintiff, on the other hand, claims that Codefendant Garcia is individually liable because she falls under the definition of "employer". *See* Docket No. 44 at 7-10. Plaintiff attempts to support this argument by citing cases from other Circuit Courts which interpret the FMLA [Family and Medical Leave Act] definition of the term "employer". *See Id*. Plaintiff further avers that because there is a split in the Circuit Courts as to the interpretation that should be provided to such term, the Court should rule in favor of attributing individual liability to Codefendant Garcia. *See Id*. The Court finds that this argument falls short. The Court briefly explains.

Under both Title VII and the ADEA, the term "employer" is defined in a similar fashion. *See* 42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b). Furthermore, the First Circuit has adopted the holdings of Sister Circuits and stated that "[t]he Title VII definition of employer must be read in the same fashion as the ADEA definition of employer." *Fantini*, 557 F.2d at 29 (citing *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998)). First Circuit precedent also holds that employees such as coworkers cannot be held individually liable under Title VII claims.[2] *Id.* at 31 (citing *Powell v Yellow Book U.S.A., Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006)) (internal citations omitted).[3] However, the First Circuit has recognized that

> [A] narrow exception to the general rule of individual liability [applies to] corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment.

*Lopez-Rosario v. Programa Seasonal Head Start/ Early Head Start de la Diocesis de Mayagüez*, 245 F.Supp.3d 360, 370-71 (D.P.R. 2017) (citing *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33-34 (1st Cir. 2007)) (citation omitted); *See also Miranda v. Deloitte LLP*, 922 F.Supp.2d 210 (D.P.R. 2013). Nonetheless, it has also held that such an exception does not apply to employees such as "ordinary supervisors", explaining that "'not every corporate employee who exercised supervisory control should be held personally liable.'" *Lopez-Rosario*, 245 F.Supp.3d at 371 (citing *Chao*, 493 F.3d at 34). *See also Gomez Gonzalez v. Guidant Corp.*, 364 F.Supp.2d 112, 116 (D.P.R. 2005) ("Title VII's statutory structure suggests that Congress did not intend to impose individual

---

[2] "Although the First Circuit Court of Appeals has not squarely addressed the issue of individual liability under the ADEA, Courts within the circuit have recently held that personal liability under the ADEA does not exist." *Miranda v. Deloitte LLP*, 979 F.Supp.2d 191, 192-93 (D.P.R. 2013).

[3] *See also Roman-Oliveras v. Puerto Rico Elec. Power Authority*, 655 F3d 43, 51 (1st Cir. 2011) ("'[I]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.'") (citing *Fantini*, 557 F.3d at 30) (citations omitted).

liability over supervisors or agents of employers.") (citations omitted); *Canabal v. Aramark Corp.*, 48 F.Supp.2d 94, 97 (D.P.R. 1999) ("Had Congress intended to hold individuals liable, it would have addressed the actions and conditions that would subject them to liability.").

In reviewing the facts of the case at bar and the law cited herein, the Court is forced to conclude that the general rule of lack of individual liability is the law applicable to Defendant Garcia. From the well-pleaded facts of the case, the Court understands that Defendant Garcia, as President of the CEE, holds duties and functions parallel those held by "an ordinary supervisor", *Lopez-Rosario*, 245 F.Supp.3d at 371, and cannot, therefore, be individually liable under Title VII or the ADEA. But, more importantly, pursuant to a long-standing precedent, Ms. García as an employee of the CEE is not subject to individual liability. Rather, it is the CEE, the entity that could be subject to liability, if applicable.

**B. Defendants' Eleventh Amendment Immunity Claim**

Defendants also allege that the claims brought against them under supplemental jurisdiction and the ADEA are barred by Eleventh Amendment immunity because the claims are for monetary damages. *See* Docket No. 32 at 15. Plaintiff, however, contends that Defendant Garcia is liable in her official capacity because the relief he seeks is not limited to monetary damages. *See* Docket No. 44 at 9. Rather, Plaintiff alleges he also seeks injunctive relief. *See Id*. The Eleventh Amendment of the Constitution of the United States provides the following:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

U.S. Const. Amend XI.

Puerto Rico has long been considered a state for Eleventh Amendment purposes. *See Irizarry–Mora v. Univ. of Puerto Rico,* 647 F.3d 9 (1st Cir. 2011); *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.,* 991 F.2d 935 (1st Cir. 1993). "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in official capacity suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 516 (1st Cir. 1987) (citing *Ramirez v. P.R. Fire Service,* 715 F.2d 694, 697 (1st Cir. 1983) and *Kentucky v. Graham,* 473 U.S. 159 (1985)) (emphasis in the original); *Maysonet–Robles v. Cabrero,* 323 F.3d 43 (1st Cir. 2003).

To determine whether an entity is an arm of the state, and therefore entitled to immunity, a two-step analysis is required: "[t]he first step of the analysis concerns how the state has structured the entity."; and if structural indicators point to different directions ". . . the vulnerability of the state's purse [which] is the most salient factor in the Eleventh Amendment determination." *Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 65 (1st Cir. 2003).

In *Fresenius*, an action was brought directly against a corporation for the collection of moneys and/or damages. The First Circuit held that "[w]here it is clear that the state treasury is not at risk, then the control exercised by the state over the entity does not entitle the entity to Eleventh Amendment immunity." *Id.* "The control asserted by the state is an important guide to the initial inquiry. But where the evidence is that the state did not structure the entity to put the state treasury at risk of paying the judgment, then the fact that the state appoints the majority

11

of the governing board of the agency does not itself lead to the conclusion that the entity is an arm of the state." *Id.* at 68.

This Court has previously discussed whether the CEE benefits from immunity in *Torres Torres v. Comisión Estatal de Elecciones de Puerto Rico*, 700 F.Supp. 613 (D.P.R. 1988). In assessing the applicability of Eleventh Amendment immunity, the court determined that:

> The Elections Commission was created by the Puerto Rico legislature. 16 L.P.R.A. § 3004. It was created for the purpose of 'planning organizing, structuring, directing and supervising the electoral body and all electoral procedures that govern any election to be held in Puerto Rico. . . ." 16 L.P.R.A. § 3013. The legislature provides the funding to the Elections Commission after reviewing the Elections Commission's Operating Expense Budget for each fiscal year submitted by the Governor. 16 L.P.R.A. § 3005. The Elections Commission has the power to sue. 16 L.P.R.A. § 3013. The statute is silent as to whether the Elections Commission can be sued.

*Id*. at page 619. The Court, therefore, determined that "[t]he Elections Commission is immune from the damage claim, since any damage award would have to be paid out form the Commonwealth treasury." *Id* (citing *Gay Student Services v. Texas A & M Univ.*, 612 F.2d 160 (5th Cir. 1980); *see also New Progressive Party (Partido Nuevo Progresista) v. Hernandez Colon*, 779 F.Supp. 646, 652 (D.P.R. 1991) ("Because [the State Elections Commission and the Commonwealth of Puerto Rico] are immune from suit under the Eleventh Amendment, they are not amenable to suit in federal court.").

This notwithstanding, the Court has also determined that, although Eleventh Amendment immunity bars states and arms of the state from being sued for monetary damages, the same cannot be said when the relief sought is injunctive relief. *Hernandez Colon*, 779 F.Supp. at 652 ("The plaintiffs in this case are seeking an injunction, not monetary damages. Regardless of any congressional abrogation or state waiver of immunity, federal courts have the power to enjoin

state officials to conform their conduct to the requirements of federal law.") (citing *Ramirez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir. 1983); *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).

In the instant case, Plaintiff is barred from seeking monetary damages due to the CEE and the Commonwealth of Puerto Rico being protected by Eleventh Amendment immunity. However, it is no less true that Plaintiff also seeks injunctive relief against the CEE and Defendant Garcia in her official capacity, a prospective form of relief not barred by the Eleventh Amendment. *See Torres Torres*, 700 F.Supp. at 619 ("Nevertheless, the eleventh amendment does not bar suits involving injunctive relief which do not affect the state coffers.") (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). Because "a suit against a state official in his official capacity for prospective relief is not precluded by the eleventh amendment", it follows that Defendant Garcia in her official capacity is not protected by the Eleventh Amendment immunity. *Torres Torres*, 700 F.Supp. at 619-20 (citing *Ex parte Young*, 209 U.S. 123 (1908)). "Therefore, this Court can decide plaintiff's claim for equitable relief against both defendants [CEE and its President in its official capacity]." *Torres Torres*, 700 F.Supp. at 620.

### C.  Supplemental claims under Puerto Rico Law

Federal jurisdiction exists when a well-pleaded complaint necessarily "requires the resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). In essence, Federal Courts by their very nature are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citing

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). The presumption is that a federal court lacks jurisdiction. *Kokkonen*, 544 U.S. at 377, 114 S.Ct. 1673. Consequently, the burden is on the plaintiff who claims jurisdiction to affirmatively allege and prove jurisdiction. *Id.* To bring a civil action within the court's subject matter jurisdiction, a plaintiff must allege that his action involves either a federal question or diversity jurisdiction. *See* 28 U.S.C. §§ 1331 & 1332.

In this case, it is clear that there is no diversity between the parties. Nonetheless, since Plaintiff brought claims to this forum pursuant to the Eleventh Amendment, Title VII and the ADEA, the Court's jurisdiction would be based on federal question jurisdiction. Once federal jurisdiction is determined, the Court may exercise supplemental or pendant jurisdiction on a state law claim, i.e. Act 100, Act 69, Puerto Rico Constitution and damages by Arts. 1802 and 1803 of the Puerto Rico Civil Code (*see* P.R. Laws Ann. Tit. 31 §§ 5141-5142), provided that it is part of the same case or controversy of the federal question before this Court. *See* 28 U.S.C. § 1367(a) (allowing a court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy"; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In the case at bar, all federal claims but the Eleventh Amendment injunctive relief are being properly dismissed well before the commencement of trial. *See Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1175 (1st Cir. 1995). Therefore, the Court will exercise its discretion and apply supplemental jurisdiction over state law claims asserted over, to wit, Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; P.R. Law 100 of June, 30, 1959,

P.R. Laws Ann. Tit. 29 § 146 *et seq.*; Puerto Rico Law No. 69 of July 6, 1985, P.R. Laws Ann. Tit. 29

§. 1321 *et seq.*; Puerto Rico Law 80 of May 30, 1976, P.R. Laws Ann. Tit. 29 § 185 *et seq.*; and

damages pursuant to Articles 1802 and 1803 of Puerto Rico Civil Code, P.R. Laws Ann. 31 §§ 5141-

5142. Accordingly, the Court hereby discusses the legitimacy of all state claim *in seriatim.*

### D. Applicability of Act. No. 100 and the Puerto Rico Unjust Dismissal Act to Government Employees

Defendants argue that the Puerto Rico Unjust Dismissal Act, P.R. Laws Ann. tit. 29, § 185a

[hereinafter, "Act. No. 80"] and the Discrimination in Employment Act, P.R. Laws Ann. tit. 29, §

146 [hereinafter, "Act No. 100"] are inapplicable to government employees. *See* Docket No. 32

at 10-11. Plaintiff, however, limits himself to generally stating that Defendants are liable under

the state law claims brought under supplemental jurisdiction. *See* Docket no. 44 at 10-12. The

court agrees with Defendant. Act No. 80 defines the term *employer* in the following manner:

> [A]ny natural or juridical person that employs or allows any employee to work for compensation. *This term does not include the Government of Puerto Rico and each one of the three branches thereof, its departments, agencies, instrumentalities, public corporations, and municipal governments as well as municipal instrumentalities or corporations.* It does not include the Government of the United States of America either.

P.R. Laws Ann. tit. 29, § 185n(g). (Emphasis added). The very wording bars the Commonwealth

of Puerto Rico or any of its instrumentalities from being sued under this statute. As a result, the

Commonwealth and the CEE, being an arm of the state, cannot be sued under Act No. 80. On a

similar note, Act No. 100 defines *employer* as:

> [A]ny natural or juridical person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or juridical person. It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises.

15

P.R. Laws Ann. tit. 29, § 151. The Supreme Court of Puerto Rico has stated that "[t]he legislative history of Act No. 100 shows that its main objective was to protect employees in the <u>private sector</u> from all types of discrimination although, <u>via exception</u>, the protection covered all employees of government agencies or instrumentalities that operate as private businesses or companies." *Rodriguez Cruz v. Padilla Ayala*, 125 D.P.R. 486, 508 (1990), 1990 WL 657488 (Official English Translation) (Emphasis in the original). "[T]he Legislature expressly excluded from said statute all the public employees of public agencies or instrumentalities that are *not* run as private businesses or enterprises. 129 D.P.R. 557, 570 (1991), 1991 WL 735863 (Official English Translation) (Emphasis in the original). As such, it follows that "because the individual co-defendants are not officials, agents, or representatives of an 'employer' under Act 100, they also cannot be held responsible as employers under that statute." *Montalvo-Padilla v. University of P.R.*, 492 F.Supp.2d 36, 46. Therefore, the Court concludes that Defendants do not fall within the scope of liability of Act No. 80 nor Act No. 100.

**E.    *Statute of Limitations regarding Supplemental State Law Claims***

For tort actions, the statute of limitations is substantive law and Puerto Rico law controls. *See Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464 (1945); *Daigle v. Maine Medical Center*, 14 F.3d 684, 689 (1st Cir. 1994). Puerto Rico's Civil Code provides that personal injury actions carry a one-year (1) statute of limitations from the moment the aggrieved person has knowledge of the injury.  31 P.R. LAWS § 5298; *Rodriguez v. Suzuki Motor Corp.*, 570 F.3d 402, 406 (1st Cir.2009) ("the statute of limitations starts to run once the injured party knows both that he has suffered a harm and who is responsible for it.").

Similarly, Puerto Rico caselaw holds that actions brought under Act No. 100 and Article II, Sec. 1 of the Constitution of the Commonwealth of Puerto Rico, P.R. Const. Art. II, § 1, also have a one-year statute of limitations. See *Olmo v. Young & Rubicam of .P.R., Inc.*, 110 P.R. Dec. 740, 746; 10 P.R. Offic. Trans. 965, 973 (1981) and cases cited therein.  Likewise, the Supreme Court of Puerto Rico has also stated the statute of limitations for a claim brought under the Discrimination in Employment for Reasons of Sex Act, P.R. Laws Ann. tit. 29, § 1321, [hereinafter, "Act No. 69"] is analogous to that of Act No. 100 (e.g. one year). *See Suarez Ruiz v. Figueroa Colon*, 145 P.R. Dec. 142, 150 (1998).

However, such one-year term is subject to tolling. The Supreme Court of Puerto Rico has stated that "[t]he tolling act represents the unequivocal manifestation of intent to put an end to the inactivity that takes place before the period of deliberation runs out." *Galib Frangie v. El Vocero de P.R.*, 1995 WL 905884 (P.R.), 12 P.R. Offic. Trans. 971. Article 1873 of the Civil Code provides three ways by which the statute of limitations may be tolled.  *Tokyo Marine and Fire Ins. Co. v. Perez & CIA de Puerto Rico, Inc.*, 142 F.3d 1, 4 (1st Cir. 1998). This may be accomplished (1) "by the institution of an action before the courts [;]" (2) "by extrajudicial claim of the creditor[;] and" (3) "by any act of acknowledgment of the debt by the debtor." *Id*. (quoting Civil Code of Puerto Rico, 31 P.R. Laws § 5303) (internal quotation omitted).

On another note, the filing of a complaint against nonexistent or fictitious parties, when an indispensable party whose identity and name are known exists, does not interrupt the statute of limitations and its subsequent amendment to include said party after the expiration of the period to file the action does not relate back to the time of the filing of the original petition, as

set forth in *Fuentes v. Tribunal de Distrito de P.R.*, 73 P.R.R. 893, 916 1952 PR Sup. LEXIS 260 (P.R. 1952) as follows:

> If the original complaint is legally sufficient and a defendant is joined under a fictitious name inasmuch as, his identity but not his specific name is known, the complaint may be subsequently amended to insert the real name of the persons when it is known. But said rule must not be applied when the amendment as to that defendant is made after the expiration of the limitation period in a case in which the original complaint is legally insufficient because it was filed against the nonexistent defendants without including an indispensable party as defendant, or where it is merely a case of ignorance as to the name of the party to the suit, although knowing his identity, or where as in the instant case, plaintiff originally knew the name and identity of a person who should have been included as defendant because she was an indispensable party.

*See also Laboy*, 598 F.Supp.2d at 195 (holding that because defendant-canine officers in a first lawsuit, which was timely filed, were not identical to defendants in a second lawsuit, which was untimely, as the officers were never identified in the first suit pursuant to Rule 15.4 of Title 32, the filing of the prior complaint did not toll the statute of limitations as to any defendants in the second lawsuit, pursuant to this section.)

In the instant case, Plaintiff was terminated from his employment on June 30, 2015. *See* Docket No. 1. It was from this moment that he alleges he started suffering damages. He subsequently filed a *Notice of Charge of Discrimination* before the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") solely against the CEE. Taking into account the aforementioned statute of limitations, Plaintiff had one year, that is, until June 30, 2016[4], to file the *Complaint* against Ms. García in her individual capacity before his actions became time barred. Plaintiff, however, did not file the *Complaint* against Ms. García until February 3, 2017,

---

[4] The Court has no information related to the proceedings before the EEOC other than the *Notice of Charge of Discrimination* filed by the CEE. Should its result require an additional dispositive motion, the Court will authorize its filing.

that is, seven (7) months after the one-year (1) deadline. For this reason, the Court is forced to conclude that, even if the Defendants were liable under these laws, Plaintiff's claims against Ms. García in her individual capacity under the Constitution of the Commonwealth of Puerto Rico, Act No. 100, Act No. 69, and Article 1802 of the Puerto Rico Civil Code are time-barred.

## IV.   CONCLUSION

Taking the complaint in the light most favorable to the Plaintiff, the Court **GRANTS IN PART and DENIES IN PART** Defendants' *Motion to Dismiss*. *See* Docket No. 32. Dismissal of the claims related to Defendant Garcia's individual liability claim and Defendants' liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 are hereby **GRANTED and DISMISSED WITH PREJUDICE.** Eleventh Amendment immunity defense regarding monetary damages as to CEE is hereby **GRANTED and DISMISSED WITH PREJUDICE.** Whereas, injunctive relief against the CEE and its President in its official capacity, a prospective form of relief not barred by the Eleventh Amendment, thus, is hereby **DENIED.**

As to the state law claims under Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; P.R. Law 100 of June, 30, 1959, P.R. Laws Ann. Tit. 29 § 146 *et seq.*; Puerto Rico Law No. 69 of July 6, 1985, P.R. Laws Ann. Tit. 29 §. 1321 *et seq.*; Puerto Rico Law 80 of May 30, 1976, P.R. Laws Ann. Tit. 29 § 185 *et seq.*; and damages pursuant to Articles 1802 and 1803 of Puerto Rico Civil Code, P.R. Laws Ann. 31 §§ 5141-5142 are hereby **DISMISSED WITH PREJUDICE** pursuant to the arguments set forth in the instant *Opinion and Order*.

As to the remaining cause of action, to wit, injunctive relief as to the Defendants' alleged unlawful and discriminatory employment termination of the Plaintiff, the Court deems in the

19

parties' best interest to schedule a *Settlement Conference* prior to moving forward in order to ascertain whether an agreement between the parties is feasible at this juncture. Accordingly, the parties are hereby ordered to submit on or before February 16, 2021, three (3) available dates to schedule the conference between the months of February and March 2021.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of February, 2021.

*S/ Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge